

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED

MAR 2 9 2005

CLERK'S OFFICE
DETROIT

DOUGLAS J. ELROD,

      Petitioner,

v.

DAVID JAMROG,

      Respondent.

_____/

CASE NO. 03-CV-75081-DT
JUDGE DENISE PAGE HOOD
MAGISTRATE JUDGE PAUL J. KOMIVES

# REPORT AND RECOMMENDATION

*Table of Contents*

| | | | |
|---|---|---|---|
| I. | RECOMMENDATION | | 2 |
| II. | REPORT | | 2 |
| | A. | *Procedural History* | 2 |
| | B. | *Exhaustion and Procedural Default* | 9 |
| | C. | *Standard of Review* | 9 |
| | D. | *Plea Claims (Claim I)* | 11 |
| | | 1. *Ineffective Assistance of Counsel* | 12 |
| | |   a. Clearly Established Law | 12 |
| | |   b. Counsel's Judgeship | 13 |
| | |   c. Failure to Investigate | 15 |
| | |   d. Advice Regarding Plea | 17 |
| | | 2. *Involuntary Plea* | 19 |
| | |   a. Clearly Established Law | 19 |
| | |   b. Analysis | 19 |
| | | 3. *Failure to Hold Evidentiary Hearing* | 22 |
| | E. | *Grievance Claim (Claim II)* | 22 |
| | F. | *Sentencing Claims (Claim III)* | 23 |
| | | 1. *Inaccurate Information* | 23 |
| | |   a. Clearly Established Law | 24 |
| | |   b. Analysis | 24 |
| | | 2. *Failure to Articulate Reason for Sentence* | 25 |
| | | 3. *Crawford Claim* | 26 |
| | G. | *Parole Claims* | 27 |
| | | 1. *Due Process Claims* | 28 |
| | | 2. *Retaliation* | 30 |
| | H. | *Conclusion* | 31 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS | | 32 |

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.     *Procedural History*

1.     Petitioner Douglas J. Elrod is a state prisoner, currently confined at the Parr Highway Correctional Facility in Adrian, Michigan.

2.     On March 18, 1998, petitioner was convicted of one count of assault with intent to commit sexual penetration, MICH. COMP. LAWS § 750.520g, pursuant to his plea of *nolo contendere* in the Livingston County Circuit Court. In exchange for his plea, the prosecutor dismissed a charge of first degree criminal sexual conduct. On May 7, 1998, petitioner was sentenced to a term of one year's imprisonment to be served in the Livingston County Jail and with work release, and to a term of five years' probation. Petitioner did not file a direct appeal of his conviction or sentence.

3.     On March 23, 2000, petitioner pleaded guilty to violation the terms of his probation by consuming cocaine. On the same date, he was sentenced to a term 4-10 years' imprisonment on the probation violation.

4.     Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.     APPELLANT'S DUE PROCESS RIGHT TO BE SENTENCED ON THE BASIS OF ACCURATE INFORMATION APPEARS TO HAVE BEEN COMPROMISED.

II.    IN IMPOSING APPELLANT'S SENTENCE, THE JUDGE FAILED TO ARTICULATE THE REASONS FOR THE SENTENCE, IN VIOLATION OF MCR 6.425(D)(2)(e).

III.   APPELLANT IS ENTITLED TO 60 DAYS GOOD TIME FOR THE ONE YEAR SENTENCE IMPOSED BY THE COURT'S ORIGINAL

2

SENTENCE.

IV.    THE VALIDITY OF APPELLANT'S GUILTY PLEA MAY BE IMPAIRED, WHERE THE PROSECUTOR AFTER DISMISSING THE ORIGINAL CHARGE AND RECHARGING APPELLANT, DID KNOWINGLY PRESENT FALSE TESTIMONY AFTER LEARNING THE VICTIM HAD SUSPECT ULTERIOR: CUSTODY, DIVORCE AND FINANCIAL MOTIVES TO CHANGE TWO EARLIER STATEMENTS USED BY THE COMPLAINING OFFICER, THAT CALL INTO QUESTION THE CONSENSUAL CHARACTER OF THE PLEA.

V.    DEFENSE COUNSEL'S FAILURE TO RAISE THE TIMELINESS, AND THE ADEQUACY OF GOOD CAUSE SHOWN, FOR PRELIMINARY EXAMINATION CONDUCTED 20 DAYS AFTER THE MANDATORY 14 DAY PERIOD AUTHORIZED BY MCL 766.4; MSA 28.922, ABSENT WAIVER BY APPELLANT, DENIED HIM [E]FFECTIVE ASSISTANCE OF COUNSEL.

Petitioner also filed a motion to supplement his motion for relief from judgment, claiming that the police investigation fell below required standards, and that his counsel was ineffective because it was based on counsel's desire to obtain a judgeship. On November 18, 2002, the trial court denied petitioner's motion for relief from judgment on the merits. *See People v. Elrod*, No. 98-10294-FC (Livingston County, Mich., Cir. Ct. Nov. 18, 2002). Petitioner sought leave to appeal in the Michigan Court of Appeals, raising these same claims. The court of appeals denied petitioner's application for leave to appeal in a standard order, based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief." *See People v. Elrod*, No. 246261 (Mich. Ct. App. May 15, 2003).

5.    Petitioner sought leave to appeal the denial of his motion for relief from judgment in the Michigan Supreme Court, identifying two claims for relief:

I.    APPELLANT DOUGLAS J. ELROD ON HIS INITIAL DIRECT APPEAL FROM HIS CONVICTION AND SENTENCE UNDER SUBCHAPTER MCR 6.508(D), ALLEGES THAT HIS TRIAL ATTORNEY WAS INEFFECTIVE WHEN CONSPIRING WITH PROSECUTOR TO

3

COMPROMISE APPELLANT'S INNOCENCE IN RETURN FOR
APPOINTMENT TO JUDGESHIP; AND THAT THE DEFECT IN THE
PROCEEDING WAS SUCH THAT IT RENDERS HIS PLEA OF GUILTY
AN INVOLUNTARY ONE TO A DEGREE THAT IT WOULD BE
MANIFESTLY UNJUST TO ALLOW HIS CONVICTION TO STAND,
WHICH IS GOOD CAUSE AND ACTUAL PREJUDICE.

II.     THE COURT OF APPEALS REVERSABLY [sic] ERRED, WHERE THE
TRIAL COURT'S ORDER DOES NOT INCLUDE A CONCISE
STATEMENT OF THE REASONS: (1) FOR DENIAL OF APPELLANT'S
APPLICATION FOR LEAVE TO FILE MOTION FOR EVIDENTIARY
HEARING, OR (2) FAILURE TO DETERMINE WHETHER AN
EVIDENTIARY HEARING WAS OR WAS NOT REQUIRED.

The Michigan Supreme Court denied petitioner's application for leave to appeal in a standard order,

based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief." *See People

v. Elrod*, 469 Mich. 952, 671 N.W.2d 48 (2003).

6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on December 18, 2003. As grounds for the writ of habeas corpus, he raises the following claims:

I.     THE STATE COURT'S ADJUDICATION OF PETITIONER'S APPLICATION
FOR LEAVE TO FILE MOTION FOR EVIDENTIARY HEARING, OR FAILURE
TO DETERMINE WHETHER EVIDENTIARY HEARING WAS OR WAS NOT
REQUIRED TO DETERMINE INEFFECTIVE ASSISTANCE OF COUNSEL,
RESULTED IN A DECISION THAT WAS BASED ON AN UNREASONABLE
DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENT
IN THE STATE COURT PROCEEDINGS. 28 U.S.C. § 2254(D)(1).

A.     IN RETURN FOR APPOINTMENT TO JUDGESHIP, DEFENSE
COUNSEL COMPROMISED PETITIONER'S DEFENSE OF
INNOCENCE BY NOLO CONTENDERE PLEA, WHICH
DEPRIVED PETITIONER [OF] HIS ENTITLEMENT TO
ADEQUATE REPRESENTATION IN A CRIMINAL MATTER.
U.S. CONST AMEND I, VI, XIV.

B.     THE VALIDITY OF PETITIONER'S NOLO CONTENDER[E]
PLEA IS IMPAIRED, WHERE HE WAS NOT FAIRLY APPRISED
OF ITS CONSEQUENCES, WHICH CALL INTO QUESTION THE
CONSENSUAL CHARACTER OF THE PLEA. U.S. CONST
AMEND XIV, 28 U.S.C. § 2254(D)(1).

4

II.     THE COURT'S ADJUDICATION OF GRIEVANCE AGAINST DEFENSE
        COUNSEL ORIGINATING FROM THE APPLICATION OF MICHIGAN
        COURT RULE 9.112(C)(2), THAT SHIFTED THE BURDEN OF PROOF
        REQUIRED BY RULES OF PROFESSIONAL CONDUCT – TO CODE OF
        JUDICIAL CONDUCT, VIOLATED PETITIONER'S DUE PROCESS, U.S.
        CONST AMEND XIV; RESULTING IN AN UNREASONABLE
        DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE
        PRESENTED IN THE STATE COURT PROCEEDINGS.

        A.      DEFENSE   COUNSEL   WHO   SOLICITED   A   $10,000.00
                RETAINER FEE TO DEFEND PETITIONER'S INNOCENCE IN
                A CRIMINAL MATTER, BUT BECAME JUDGE, (UNDER
                COLOR OF LAW) PRIOR TO FULL-FILLING [sic] HIS LEGAL
                OBLIGATION, AND DID NOT RETURN APPROXIMATELY
                $6,970.00 [OF] UNEARNED FEES TO PETITIONER, WAS A
                BREACH OF CONTRACT, THAT DEPRIVED PETITIONER OF
                DUE PROCESS OF LAW.

III.    PETITIONER'S DUE PROCESS RIGHT TO BE SENTENCED ON THE
        BASIS OF ACCURATE INFORMATION APPEARS TO HAVE BEEN
        COMPROMISED BY:

        A.      THE   PROSECUTOR'S   REFERENCE   TO   "VIOLENCE   HE
                DEMONSTRATED IN CONJUNCTION WITH THE USE OF
                COCAINE," P. 6 WITHOUT ANY EVIDENCE IN SUPPORT OF
                THE CLAIM.

        B.      THE COMMENT IN THE INVESTIGATOR'S MARCH 7 REPORT
                THAT PETITIONER WAS VIOLENT ONCE BEFORE WHEN HE
                HAD BEEN DRINKING AND THAT HE, THEREFORE, COULD
                NOT GUARANTEE PETITIONER WOULD NOT BE VIOLENT
                ON COCAINE, A COMMENT WHICH IS PURE SPECULATION.

        C.      THE CLAIM IN THE PRE-SENTENCE REPORT THAT THERE
                [WERE] PRIOR RAPES DURING PETITIONER'S MARRIAGE,
                A CLAIM TO WHICH HIS ATTORNEY OBJECTED, PP. 9-10.
                THE JUDGE NOTED PETITIONER'S OBJECTION BUT DID
                NOT INDICATE WHETHER HE ACCEPTED THE CLAIM AS
                TRUE OR WAS TAKING IT INTO ACCOUNT IN IMPOSING
                SENTENCE (THERE IS CONCERN THAT THE PAROLE BOARD
                WILL USE THIS INFORMATION AGAINST PETITIONER
                WHEN HE COME[S] UP FOR PAROLE CONSIDERATION).

        D.      IN IMPOSING PETITIONER'S SENTENCE, THE JUDGE FAILED

5

TO ARTICULATE THE REASON FOR THE SENTENCE.

7.    On May 5, 2002, petitioner was denied parole by the Michigan Parole Board. Petitioner filed an application for leave to appeal in the Ingham County Circuit Court. The circuit court denied petitioner's application on the merits, concluding that the Board's decision was not arbitrary or capricious, and that it complied with Michigan law. *See Elrod v. Michigan Parole Bd.*, No. 02-1238-AA (Ingham County, Mich., Cir. Ct. Dec. 5, 2002. Petitioner sought leave to appeal this decision in both the Michigan Court of Appeals and the Michigan Supreme Court, raising a single claim:

> THE PAROLE BOARD'S REFUSAL TO REVIEW RELEVANT EVIDENCE (SEX
> OFFENDER THERAPY TERMINATION REPORT) AT PAROLE INTERVIEW,
> BECAUSE APPELLANT SOUGHT POST CONVICTION APPEAL, AND
> WOULD NOT ADMIT GUILT TO PENETRATION, WERE MOTIVATING
> FACTORS OF RETALIATION FOR A BIAS[ED] PAROLE BOARD DECISION,
> IN VIOLATION OF HIS PROTECTED CONSTITUTIONAL RIGHTS, AND IS
> NOT LAWFUL OR FREE FROM AN ABUSE OF DISCRETIONARY POWER.
> US CONST AMEND I, XIV; (RJA) MCL 600.631.

Both courts denied petitioner's applications for leave to appeal. *See Elrod v. Parole Bd.*, 469 Mich. 1000, 675 N.W.2d 590 (2004); *Elrod v. Parole Bd.*, No. 245695 (Mich. Ct. App. July 25, 2003).[1]

8.    On December 1, 2003, the Board again denied parole to petitioner. Following that decision, petitioner filed a petition for judicial review in the Ingham County Circuit Court, raising the following claims:

> I.    A 18 MONTH CONTINUANCE BY DECISION OF PAROLE BOARD
> WHICH SECOND GUESSED A PSYCHOLOGIST'S "TREATMENT &
> CURRENT TERMINATION REPORT," WAS NOT LAWFUL OR FREE
> FROM AN ABUSE OF THE BOARD'S DISCRETIONARY POWER, AND
> WAS UNLAWFUL PROCEDURE THAT DENIED PETITIONER

---

[1] The documents relating to the first denial of parole, and petitioner's appeal therefore, are contained in Appendix I to petitioner's habeas application.

FUNDAMENTAL FAIRNESS UNDER BOTH STATE & FEDERAL CONSTITUTION. MICH CONST ART 6, § 28; U.S. CONST AMEND XIV.

II.     THE PAROLE BOARD FAILED TO INDICATE WHAT IT RELIED ON FOR SUBSTANTIAL AND COMPELLING REASONS FOR GUIDANCE & PSYCHOLOGIST REPORT DEPARTURE IN REACHING ITS' DECISION THAT PETITIONER CONTINUE PLACING BLAME FOR HIS OFFENSE ON THE VICTIM.

III.    PAROLE BOARD'S OBJECTION TO PSYCHOLOGIST EXPERT OPINION TO DISCRIMINATORILY DEVIATE OPTIMUM DISCRETION BEYOND SYSTEM OF VARIABLE MINIMUM TERMS THAT DENY DISPARITY IN THE MINIMUM TERMS FIXED BY SENTENCING COURT TAILORED TO PETITIONER, CONSISTENT WITH HIS THREAT TO THE COMMUNITY, WHICH MAKES HIS EXPECTATION FOR RELEASE FROM PRISON UNDER SUCH INDETERMINATE SENTENCING ACT "FUTILE," REPUGNANT TO BOTH: MICHIGAN CONSTITUTION 1963, ART VI, § 45; THE STATUTORY INTENT OF MCLA 769.12(2), AND VIOLATES THE DUE PROCESS AND EQUAL PROTECTION CLAUSE OF THE UNITED STATE CONSTITUTION. US CONST AMEND XIV.

IV.    THE PAROLE BOARD ERRED WHEN SUBSTITUTING ITS OPINION FOR THAT OF A PSYCHOLOGIST (TO DENY PETITIONER PAROLE) EVEN IF THE BOARD MIGHT HAVE REACHED A DIFFERENT RESULT HAD IT TREATED PETITIONER'S CONDITION AS THE PSYCHOLOGIST.

V.     A FIRST TIME OFFENDER WHO RECEIVED A FOUR TO TEN YEAR SENTENCE, COMPLETED RG&C RECOMMENDATIONS, MAINTAINED EMPLOYMENT, AND RECEIVED NO DISCIPLINARY ACTION, BUT RECEIVED TWO SEPARATE 24 MONTH CONTINUANCES WAS UNLAWFUL PROCEDURE THAT DENIED PETITIONER FUNDAMENTAL FAIRNESS UNDER BOTH STATE & FEDERAL CONSTITUTION. MICH CONST ART 6, § 28; US CONST AMEND XIV.

VI.    AN 18 MONTH CONTINUANCE IN RETALIATION OF THE EXERCISE OF PETITIONER'S PROTECTED RIGHT TO "REDRESS PAROLE BOARD APPEAL" PENDING IN THE MICHIGAN SUPREME COURT, IS NOT LAWFUL OR FREE FROM AN ABUSE OF DISCRETIONARY POWER, AND WAS UNAUTHORIZED BY LAW. MICH CONST 1963, ART 6, § 28; US CONST AMEND I, XIV.

VII.    THE PAROLE BOARD'S AUGUST 26, 2003 NOTICE OF INTENT TO
CONDUCT A PAROLE BOARD INTERVIEW, FAILED TO STATE
THAT "PRISONER CONTINUED TO PLACE BLAME FOR HIS
OFFENSE ON THE VICTIM."

On January 20, 2004, the circuit court dismissed the petition for judicial review for lack of

jurisdiction. See Elrod v. Michigan Dep't of Corrections, No. 04-13-AA.[2]

9.      On February 25, 2004, petitioner filed a motion to supplement his habeas application

seeking to add essentially three claims relating to the Board's denial of parole: (1) denial of due

process in various respects; (2) failure of the Board to follow state law; and (3) retaliation.  The

Court granted petitioner's motion on March 16, 2004.

10.     On May 27, 2004, petitioner filed a second motion to supplement his habeas

application, seeking to add a claim that his sentence was invalid because it relied on testimonial

statements by witnesses whom he did not have the opportunity to cross-examine, in violation of the

Supreme Court's decision in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).  By an

Order entered this date, I have granted petitioner's second motion to supplement.

11.     Respondent filed his answer to the petition on July 9, 2004.  Respondent contends

that: (1) petitioner's first and third claims, asserting ineffective assistance of counsel and inaccurate

information at sentencing, is unexhausted or procedurally defaulted; (2) petitioner's second claim,

relating to the attorney grievance, is not cognizable; and (3) petitioner's supplemental parole claims

are either not cognizable or without merit.[3]

---

[2]The documents relating to the second denial of parole are contained in Appendix J to
petitioner's habeas application.

[3]Because the Court had not yet ruled on petitioner's second motion to supplement,
respondent does not directly address this claim in his answer.  However, respondent does state in
his answer that he opposes supplementation because Crawford was not clearly established law at

8

12.     Petitioner filed a reply to respondent's answer on July 28, 2004.

B.     *Exhaustion and Procedural Default*

Respondent contends that the bulk of petitioner's claims are either unexhausted or procedurally defaulted. In light of the complex procedural history of this case in the state courts, and the clear lack of merit to petitioner's claims, it is simpler to deny the claims on the merits. While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also, Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Similarly, § 2254 explicitly provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Accordingly, the Court should proceed directly to the merits of petitioner's claims.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

the time of petitioner's conviction, and any claim based on *Crawford* is unexhausted.

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also, Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.

The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-

10

21 (citations omitted); *see also, Williams,* 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams,* 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams,* 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases  indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early,* 537 U.S. at 8; *see also, Mitchell,* 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox,* 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz,* 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones,* 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Plea Claims (Claim I)*

In his first claim, petitioner contends that his counsel compromised his claim of innocence

11

in exchange for appointment to a judgeship in Genesee County, and that counsel was ineffective and his guilty plea[4] unknowing because he was not fairly apprised of the consequences of his plea. Finally, petitioner also contends in his first claim that the state courts erred in failing to afford him an evidentiary hearing in connection with these claims during the proceedings on his motion for relief from judgment. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Ineffective Assistance of Counsel*

*a. Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

---

[4]Petitioner asserts that he pleaded *nolo contendere*. However, the plea transcript suggests that the parties and the court treated petitioner's plea as one of guilty. Because there is no legal difference between the two for purposes of petitioner's challenge to his conviction, *see Koniak v. Heritage Newspapers, Inc.*, 198 Mich. App. 577, 581, 499 N.W.2d 346, 348 (1993) (per curiam) (explaining that a plea of *nolo contendere* is the same as a guilty plea for purposes of sentencing, and that the only distinction between the two is that a *nolo* plea cannot be used against the defendant as an admission of guilt in a subsequent civil or criminal case), I refer to petitioner's plea as a guilty plea.

followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a no contest or guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded [no contest or] guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also, O'Hara*, 24 F.3d at 828.

### b. Counsel's Judgeship

Petitioner contends that his counsel failed to properly investigate the matter and erroneously advised him to plead guilty in exchange for a state court judgeship. In support of his claim, petitioner points to counsel's comment at the conclusion of the plea hearing:

| MR. FARAH: | . . . . I want to alert the Court that I may no longer be in the practice of law April 23rd, if in fact I receive a judgeship from Governor Engler. I will know within the next 24 hours. |
| THE COURT: | Well, that will be a wonderful which county? |

13

| | |
|---|---|
| MR. FARAH: | Genesee. |
| THE COURT: | Wonderful.  Judge Yotis' seat? |
| MR. FARAH: | Judge Yotis' seat.  I should know soon, but I've already arranged for substitute counsel.  So, just in case I'm not here, the Court will know why. |

Plea Tr., dated 3/18/98, at 13.

Petitioner's attack on counsel's motivations in representing him does not, in itself, state a claim for habeas relief. *See Hall v. United States*, 371 F.3d 969, 974 (7th Cir. 2004) ("A showing of a conflict does not automatically entitle a petitioner to reversal."); *Moss v. United States*, 323 F.3d 445, 471 (6th Cir. 2003). Rather, if true, counsel's motivation may establish a conflict of interest, which would alter the standard for judging petitioner's ineffective assistance of counsel claims. As the Supreme Court has explained, in certain narrow circumstances "no specific showing of prejudice is required because the adversary process itself is presumptively unreliable." *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (internal quotations and alterations omitted). This presumed-prejudice rule is limited to those cases in which "the defendant alleges not that counsel made specific errors in the course of representation, but rather that during the judicial proceeding he was–either actually or constructively–denied the assistance of counsel altogether." *Id.* Because prejudice is presumed only where the criminal defendant effectively is denied counsel altogether, the presumption of prejudice arises only in four discrete circumstances: (1) when there is a complete denial of counsel or a denial at a critical stage of the proceedings: (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; (3) when counsel is called upon to render assistance in circumstances in which no competent counsel could perform; or (4) when the defendant's attorney actively represents conflicting interests. *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Moss v. United*

14

*States*, 323 F.3d 445, 455 (6th Cir. 2003).

Petitioner essentially argues that this fourth category–representation of conflicting interests–is implicated here. The Court should disagree. To establish a conflict of interest leading to a presumption of prejudice, petitioner must "demonstrate[] that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected the lawyer's performance." *Strickland*, 466 U.S. at 392. Petitioner offers no evidence or argument to show that an actual conflict existed–*i.e.*, that counsel's representation had any connection whatsoever with his impending appointment as a judge. The record merely reflects that, at the time of the plea hearing, counsel was being considered by the governor for appointment to a vacant judicial seat in Genesee County. From this simple premise, petitioner assumes without fact or law to support him that counsel essentially coerced him into pleading guilty as a *quid pro quo* for obtaining the judicial appointment. Petitioner's claim is nothing more than "some attenuated hypothesis having little consequence to the adequacy of representation." *United States v. Fahey*, 761 F.2d 829, 835 (1st Cir. 1985), *quoted with approval in United States v. Frederick*, No. 83-1121, 1985 WL 13474, at *5 (6th Cir. July 3, 1985) (per curiam); *see also, Frazier v. Kelly*, 112 F. Supp. 2d 253, 261 (W.D.N.Y. 1999). Accordingly, the Court should conclude that petitioner has failed to establish that counsel was laboring under an actual conflict of interest, and should therefore analyze his claims under the normal *Strickland* test.

### c. Failure to Investigate

Petitioner contends that counsel failed to properly investigate the case, leading counsel to advise petitioner to plead *nolo contendere* despite his innocence. In support of this claim, petitioner relies on a report of a private investigator hired by his family after his conviction. *See* Br. in Supp.

15

of Pet., Appx. G. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is true that counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See, e.g., O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994) (failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted); *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992) (reasonable investigation was lacking and hence counsel's performance was deficient). To be entitled to habeas relief, however, petitioner must "identif[y] . . . exculpatory evidence or additional defensive theories that would have been discovered or developed had his counsel investigated the case more thoroughly." *Flores v. Johnson*, 957 F. Supp. 893, 913 (W.D. Tex. 1997); *see also, Jones v. Page*, 76 F.3d 831, 841 (7th Cir. 1996); *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

The private investigator's report upon which petitioner relies suggests that the police investigation did not follow professional norms, and that the complaining victim–petitioner's wife was not credible. However, all of the problems with the victim's credibility identified by the private investigator were well known to petitioner's counsel, as these were the very subjects upon which he cross-examined the victim at the preliminary examination. *Compare* Br. in Supp. of Pet., Appx. G, at 1i-1k, *with* Prelim. Exam. Tr., at 22-25. Further, the witnesses identified and interviewed by the private investigator went only to collateral matters. None was able to give a statement with respect to the actual assault at issue. *See* Br. in Supp. of Pet., Appx. G, at 1a-1f. These witnesses were essentially only able to give statements relating to either (a) the general relationship between petitioner and the victim, or (b) the victim's character. The former would have

16

as likely hurt as helped petitioner's case, and the latter would likely have been inadmissible. Thus, petitioner cannot show how he was prejudiced by counsel's alleged lack of proper investigation. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Advice Regarding Plea

Petitioner also contends that counsel was ineffective in advising him to plead guilty despite his innocence, and that counsel coerced him into pleading guilty. As to the latter issue, the plea transcript belies petitioner's claim that he was coerced by counsel. Petitioner indicated to the trial court that: he was satisfied with the service of his attorney, *see* Plea Tr., at 5; he freely and voluntarily signed the waiver of jury trial form, and that no one forced him or threatened him, *see id.* at 6; no one threatened him or attempted in any manner to force him to enter his plea, *see id.* at 8-9; and that he was pleading guilt of his own free will, *see id.* at 9, 11. "These declarations concerning the performance of [defendant's] counsel were made in open court under oath and thus carry a strong presumption of verity." *United States v. Grewal*, 825 F.2d 220, 223 (9th Cir. 1987), *quoted in Johnson v. O'Dea*, No. 93-5446, 1993 WL 513933, at *4 (6th Cir. Dec. 9, 1993); *accord Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975); *see also, Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredibly."). Petitioner has offered nothing but his own conclusory allegations to belie these statements he made at the plea hearing.

Nor can petitioner establish that counsel was ineffective for advising him to plead guilty. Petitioner was faced with a first degree criminal sexual conduct charge, which carries a potential term of life imprisonment. *See* MICH. COMP. LAWS § 750.520b(2). The victim's testimony, if

17

believed by the jury, was certainly sufficient to establish this crime. *See* Prelim. Exam. Tr., at 12 (victim testimony that petitioner shoved his fingers into victim's vagina); *People v. Callahan*, 152 Mich. App. 29, 31-32, 391 N.W.2d 512, 513 (1986) (per curiam) (victim's testimony that defendant inserted his hand into her vagina sufficient to convict defendant for first degree criminal sexual conduct). Further, although petitioner denies having penetrated the victim, his defense at trial would have been difficult in light of his admission that he assaulted the victim and stripped off her clothes. *See* Br. in Supp. of Pet., Appx. G, at 1g (private investigator's notes of interview with petitioner in which petitioner admitted that "he pushed [the victim] over the cough [sic], causing her to fall over the vacuum. He then pulled her pants & panties off and imitated humping her from behind[.]").

Against this evidence and the potential of a life sentence, counsel secured a plea deal whereby petitioner was allowed to plead guilty to a crime carrying a maximum sentence of only 10 years' imprisonment, *see* MICH. COMP. LAWS § 750.520g(1), and which resulted in an actual sentence of one year's imprisonment in the county jail with work release and a five year term of probation. "[C]ounsel's duty under the Constitution was to negotiate a reasonably favorable plea agreement, not the best one possible." *Abreu v. United States*, 925 F. Supp. 1404, 1411 (N.D. Ind. 1996); *cf. Marion v. United States*, No. 94-5180, 1994 WL 545441, at *2 (6th Cir. Oct. 5, 1994) (Defendant "appears to now believe he might have gotten a better deal by pleading guilty to a different count. This is wholly insufficient to invalidate a plea agreement."). In short, considering the potential maximum sentence defendant was faced with and his own admissions, defense counsel negotiated a plea bargain which was highly favorable to the defendant. "The fact that . . . defendant may [now] regret having followed his attorney's advice is not grounds for relief[.]"

18

*United States v. Kranzthor*, 614 F.2d 981, 983 (5th Cir. 1980). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    2.    *Involuntary Plea*

Petitioner also contends that his plea was not knowing and voluntary. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id.* at 508 (footnotes omitted).

### b. Analysis

Petitioner contends that he was not fairly apprised of the plea and its consequences. Again, however, the plea transcript belies his claim. Petitioner indicated that counsel explained the charges

19

to him. *See* Plea Tr., at 5. He also stated that he knew the maximum sentence that could be imposed was 10 years' imprisonment. *See id.* Finally, he stated that he understood the nature of the plea agreement–*i.e.*, that in exchange for his plea the prosecutor would drop the first degree criminal sexual conduct charge. *See id.* at 7.

Petitioner also contends that he did not understand the nature of the charges, as evidenced by the fact that he originally stated to the trial court that he was pleading guilty to attempted criminal sexual conduct. *See id.* at 4. However, the trial judge immediately asked petitioner if he meant "assault with intent?" *Id.* Petitioner responded that he did. *See id.* Further, the principle difference between assault with intent to commit CSC and attempted CSC is that the former requires an actual assault–*i.e.*, a battery or placing the victim in fear of an imminent battery–while the latter requires only some overt act in preparation for the CSC. *See People v. Worrell*, 417 Mich. 617, 634-35, 340 N.W.2d 612, 618-19 (1983) (Boyle, J., dissenting). Because petitioner admitted that he assaulted the victim, *see* Plea Tr., at 9-10, it is difficult to conclude that he did not understand the charge against him, particularly in light of the fact that the trial judge corrected him the first time he stated he was pleading guilty to attempt and petitioner's indication that counsel had explained the charges to him.

Petitioner also suggests that his plea was coerced because the prosecutor over-charged him by charging first degree criminal sexual conduct. As explained above, however, the victim's testimony, if believed by the jury, was sufficient to establish the elements of first degree criminal sexual conduct. Thus, because the charge was properly brought, petitioner's plea was not coerced even if the prosecutor's motivation for bringing the charge was to induce a plea. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978).

Finally, petitioner contends that the elicitation of a factual basis for the plea establishes that

the plea was coerced. During the plea hearing, the following exchange took place:

| | |
|---|---|
| MR. ELROD: | On September 29th, 19 just last year–my wife served me with the divorce papers and I found out what happened next door with my next door neighbor's husband and I pulled my wife's pants down and her underwear and bent her over the couch, pulled my pants down and humped and then I picked her up and carried her outside and told her to go next door. |
| THE COURT: | Did you have sexual relations with her? |
| MR. ELROD: | No, I did not, sir. |
| THE COURT: | Cover the elements. |
| MS. MAAS: | Did you ·just in terms of I think we more in terms of the assault. Did he - |
| THE COURT: | Go ahead. |
| MS. MAAS: | –place her–during the course of this, did you place her in fear of |
| MR. ELROD: | Yes, I did. |
| MS. MAAS: | –receiving– |
| MR. ELROD: | Yes. |
| MS. MAAS: | –battery? |
| MR. ELROD: | Yes, I did. |
| MS. MAAS: | Okay. And you did that with the intent to or you assaulted her intending to commit some type of sexual penetration. Is that correct? |
| MR. ELROD: | Yes, sir. |

Plea Tr., at 10. This exchange evinces no coercion. Although petitioner denied that he had sexual

relations with his wife, this was not an element of the assault with intent to commit criminal sexual

conduct charge. On more direct questioning by the prosecutor, petitioner did not hesitate to affirm

each element of the crime to which he pleaded, including that the assault was made with the intent

of committing a sexual penetration. Contrary to his claim, petitioner did not protest his innocence;

instead, he admitted to each essential element of the crime charged. At most, he protested his

innocence to the initially charged greater crime of first degree criminal sexual conduct, but that is

irrelevant as he did not plead guilty to that charge. The prosecutor's questioning did not coerce

petitioner into pleading guilty, but "merely explored the factual basis for [his] plea." *Rodriguez v. United States*, 964 F.2d 840, 841 (8th Cir. 1992). Accordingly, the Court should conclude that petitioner's plea was voluntary, and that he is therefore not entitled to habeas relief on this claim.

### 3. *Failure to Hold Evidentiary Hearing*

Although he devotes no argument to the claim in his brief, in the heading of his first claim petitioner also contends that the state courts erred by failing to rule on his motion for an evidentiary hearing. To the extent that petition raises this claim as an independent basis for habeas relief, the Court should conclude that it is without merit.

It is well established that nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue[.]" *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Thus, the state courts' alleged error in his postconviction proceeding does not provide a basis for habeas relief.

### E. *Grievance Claim (Claim II)*

Petitioner next claims that the state's adjudication of his grievance against defense counsel was unreasonable under § 2254. This claim provides no basis for habeas corpus relief.

Habeas review under § 2254 is limited to claims that a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). It has thus long been established that "[t]he basic principle of habeas corpus proceedings is to inquire into the legality of the detention of the applicant . . . . The writ cannot be used to invoke judicial determination of

questions which do not affect the lawfulness of the custody and detention, and the decision of which would not result in the release of the applicant from custody." *Hart v. Ohio Bureau of Probation & Parole*, 290 F.2d 550, 551 (6th Cir. 1961). The state's resolution of petitioner's grievance has nothing to do with the lawfulness of petitioner's detention, and any resolution of that grievance would affect only whether some form of discipline should be imposed on petitioner's counsel. Nor does the underlying fee dispute which formed the basis of petitioner's grievance affect the constitutionality of his detention. That dispute arose from counsel's failure to return a portion of the retainer paid by petitioner after he withdrew from representation and new counsel was appointed. It did not arise during counsel's representation of petitioner, and therefore could not have affected counsel's representation in any manner. Because this claim does not challenge the constitutionality of petitioner's conviction and sentence, it is not a proper basis for habeas relief. Accordingly, the Court should deny petitioner's application on this claim.

F.     *Sentencing Claims (Claim III)*

Petitioner next raises a number of challenges to his sentence. These challenges relate not to the original sentence imposed, but to the sentence imposed following the court's revocation of petitioner's probation. The Court should conclude that each of these claims is without merit.

1.     *Inaccurate Information*

Petitioner first contends that he was sentenced on the basis of inaccurate information. Specifically, he contends that three pieces of information were inaccurate: (1) the prosecutor's reference to violence he demonstrated in conjunction with the use of cocaine, *see* Probation Violation Plea/Sentence Tr., dated 3/23/00, at 6; (2) the comment in the presentence report that petitioner had been violent once before when he had been drinking and therefore was likely to be

23

violent when under the influence of cocaine; and (3) the victim's claim in the presentence report that there were prior rapes by petitioner during their marriage, *see id.* at 9. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally, Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41. In order to be entitled to relief on such a claim, however, petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000).

### b. Analysis

Petitioner cannot show that the trial judge actually relied on any materially false information in imposing sentence. With respect to the alleged prior rapes, there is simply no basis on which to conclude that the trial judge's sentence was based on this information. Although the judge did not articulate the basis for his sentence, he did adopt the prosecutor's position that a lengthy prison sentence should be imposed. But the prosecutor never argued that such a sentence should be imposed on the basis of the alleged prior rapes. This fact was brought up by defense counsel in an objection to the presentence report. *See* Probation Violation Plea/Sentence Tr., at 8-9.[5] Rather, the

---

[5]Indeed, although the court did not appear to ultimately rule on petitioner's objection, the court did agree to take note that petitioner denied that any such rapes had occurred. *See* Probation Violation Plea/Sentence Tr., at 10.

prosecutor argued for a lengthy sentence solely on the basis of the circumstances of the crime of conviction and petitioner's violent behavior while under the influence of cocaine. *See id.* at 6. This being the case, there was no violation of petitioner's right to be sentenced based upon accurate information, because "[w]hen a sentencing judge considers unreliable information in sentencing, [relief] is required only if the challenged information is demonstrably made the basis for the sentence." *United States v. Huckins*, 53 F.3d 276, 280 (9th Cir. 1994) (internal quotation omitted); *see also, United States v. Garcia*, 693 F.2d 412, 415 (5th Cir. 1982); *Friday v. Straub*, 175 F. Supp. 2d 933, 940-41 (E.D. Mich. 2001) (Gadola, J.); *Warren v. Miller*, 78 F. Supp. 2d 120, 130 (E.D.N.Y. 2000).

As to the claims by the prosecutor and the presentence report regarding petitioner's violent behavior while intoxicated and under the influence of cocaine, petitioner has offered nothing to show that this information was inaccurate. Indeed, petitioner indicated to the private investigator that he had been drinking on the night of the assault for which he was convicted. *See* Br. in Supp. of Pet., Appx. G, at 1g. There was nothing improper with the trial court's taking note of both the violence petitioner had exhibited in connection with the crime and his substance abuse problems. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.    *Failure to Articulate Reason for Sentence*

Petitioner next claims that the trial court erred by failing to articulate its reasons for imposing a 4-10 year sentence. This claim is not cognizable on habeas review. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived

errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).

Although state law may require a Michigan trial judge to state the reasons for imposing a particular sentence on a defendant, the Constitution does not. Thus, the failure of the trial judge to state her reasons for imposing the particular sentence does not raise a cognizable habeas claim. *See Branch v. Cupp*, 736 F.2d 533, 536 (9th Cir. 1984); *Bennett v. Duckworth*, 909 F. Supp. 1169, 1178 (N.D. Ind. 1995), *aff'd*, 103 F.3d 133 (7th Cir. 1996). Accordingly, the Court should conclude that petitioner is not entitled to relief on this claim.

  3. *Crawford* Claim

Finally, in his second supplement to his habeas application, petitioner contends that his original sentence violates the Supreme Court's decision in *Crawford v. Washington* 541 U.S. 36, 124 S. Ct. 1354 (2004). Specifically, he contends that the pretrial report contained a letter from a YWCA therapist which in turn included a statement by petitioner that he had digitally penetrated the victim. *See* Sentence Tr., dated 5/7/98, at 10. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for two reasons.

First, *Crawford* is inapplicable here. In *Crawford*, the Court held that the Confrontation Clause of the Sixth Amendment does not permit the introduction of testimonial out-of-court statements unless the declarant is unavailable and the defendant had the opportunity to cross-examine the declarant, either at trial or at some other proceeding. *See Crawford*, 541 U.S. at ___, 124 S. Ct. at 1365, 1369, 1374. However, the Sixth Amendment establishes trial rights, and thus "[t]he confrontation clause does not apply to a sentencing hearing." *United States v. Bingham*, 81

F.3d 617, 630 (6th Cir. 1996); *accord Szabo v. Walls*, 313 F.3d 392, 398 (7th Cir. 2002); *United States v. Garcia-Sanchez*, 189 F.3d 1143, 1149 (9th Cir. 1999). Not surprisingly, therefore, "[n]othing in *Crawford* indicates that its holding is applicable to sentencing proceedings." *United States v. Holden*, 109 Fed. Appx. 673, 674 (5th Cir. 2004), *vacated and remanded on other grounds*, 125 S. Ct. 1093 (2005).

Second, even assuming that the Confrontation Clause and therefore *Crawford* are applicable to sentencing proceedings in general, petitioner cannot benefit from the rule established in *Crawford*. Under § 2254(d)(1), habeas relief is available only if the state court's decision was contrary to, or an unreasonable application of, "clearly established federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). As the Supreme Court has explained, "clearly established law" under § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court *at the time the state court renders its decision*." *Lockyer*, 538 U.S. at 72. Petitioner's sentencing and post-conviction proceedings were concluded well before the Supreme Court decided *Crawford*. Thus, *Crawford* does not constitute "clearly established law" upon which habeas relief for petitioner may be predicated. *See Brown v. Uphoff*, 381 F.3d 1219, 1224 n.4 (10th Cir. 2004); *Lies v. Jackson*, 100 Fed. Appx. 378, 379 (6th Cir. 2004). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Parole Claims*

In his first supplement to the habeas application, petitioner raises several challenges to the Michigan Parole Board's denial of his parole on two occasions. Specifically, he contends that he was denied due process in the parole proceedings by: (1) the Board's failure to request a psychological evaluation and failure to follow a psychologist's opinion; (2) the Boards's failure to

27

indicate the basis for its departure from the parole guidelines; (3) the failure of the notice of intent to give notice that his continuing to place blame on the victim would affect his parole eligibility; (4) the Board's failure to follow various state laws relating to parole. Petitioner also contends that the first denial of parole was in retaliation for petitioner's exercise of his constitutional rights. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

    1.    *Due Process Claims*

Petitioner is unable to assert a due process claim in connection with the denial of his parole. The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend XIV, § 1. By its terms, therefore, the particular procedures required by the clause apply only to deprivations of "life, liberty, or property;" they do not apply to deprivations of other interests. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). In this case, plaintiff has no liberty or property interest in being released on parole, and thus the Due Process Clause does not require the state to follow any particular procedures.

"A liberty interest can arise in one of two ways: (1) from the Due Process Clause itself; or (2) from a state or federal statute." *Ho v. Greene*, 204 F.3d 1045, 1058 (10th Cir. 2000). *See generally, Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). As to the first, of its own force "[t]he [D]ue [P]rocess [C]lause does not guarantee an inmate a right to parole." *Marshall v. Mitchell*, 57 F.3d 671, 672 (8th Cir. 1995); *accord Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979); *Mayberry v. Hudson*, No. 92-2358, 1993 WL 147575, at *1 (6th Cir. May 5, 1993) (citing *Greenholtz* and *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987)). Thus, plaintiff

28

has a protected liberty interest only if Michigan law creates such an interest. Because it does not, plaintiff's claim must fail.

In the parole context, whether a state law creates a protected liberty interest "turn[s] on the presence or absence of language creating 'substantive predicates' to guide discretion." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). Thus, to create a liberty interest the regulations at issue must "contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow[.]" *Id.* at 463; *accord Marshall*, 57 F.3d at 672. Under Michigan law, "a prisoner's release on parole is discretionary with the parole board." MICH. COMP. LAWS § 791.234(8); *see also, People v. Moore*, 164 Mich. App. 378, 387-88, 417 N.W.2d 508, 512 (1987). Thus, "Michigan's state statutes do not create an explicit entitlement to parole," and thus do not give rise to a protected liberty interest. *White v. Kelly*, 82 F. Supp. 2d 1184, 1189 (D. Colo. 2000) (considering federal prisoner's challenge to denial of parole hearing by Michigan authorities); *accord Mayberry*, 1993 WL 147575, at *1 (same); *Canales v. Gabry*, 844 F. Supp. 1167, 1171 (E.D. Mich. 1994) (Gilmore, J., adopting Report of Morgan, M.J.) (same); *cf. Marshall*, 57 F.3d at 672-73. As the Sixth Circuit has explained:

> After *Olim* [*v. Wakinekona*, 461 U.S. 238 (1983)] and *Inmates* [*of Orient Correctional Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233 (6th Cir. 1991)], it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights[.] . . . The Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole. So long as the parole discretion is broad, as in Michigan, "the State has not created a constitutionally protected liberty interest" by enacting procedural rules. *Olim*, 461 U.S. at 249. The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole . . . as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such rules as a matter of *federal* due process.

*Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) (footnote and parallel citation omitted) (emphasis in original); *see also, Moore v. Hofbauer*, 144 F. Supp. 2d 877, 882 (E.D. Mich. 2001) (Tarnow, J.).

Because petitioner has no liberty interest in parole, he cannot show that he was denied any liberty interest without due process of law by the Board's failure to grant him release on parole, or by the Board's alleged failure to follow state law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his due process claims.

2.    *Retaliation*

Petitioner also contends that the Board denied him parole in retaliation for him exercising his constitutional right of access to the courts. Although he does not set forth the basis for this claim in his motion to supplement, in his state court challenge to the parole denial petitioner argued that this claim was supported by the Board's reliance on his continued protestations of innocence and by a Board member's statement to him that: "You got nothing coming, you'll have to get your release from the court."

Taking the statement first, the statement does not indicate any retaliatory motive by the Board. On its face, the statement merely says that petitioner will not be released on parole by the Board, and that any relief from his conviction would therefore have to be obtained in the courts. Nothing in the statement says or implies that petitioner's pursuit of court remedies is the basis for the Board's decision. The statement therefore provides no support for petitioner's claim that he was denied parole in retaliation for exercising his constitutional rights.

As to the Board's reliance on his continued protestations of innocence, this does not provide a basis for habeas relief. Nothing in the parole records indicates that the Board denied petitioner

30

parole based on his pursuit of state and federal court remedies. At most, the records show that the Board denied parole, in part, based on petitioner's continued minimization of his responsibility and his placing the blame on the victim. *See* Br. in Supp. of Pet., Appx. J, at 24. Thus, petitioner has failed to establish a causal connection between the denial of his parole and his protected activity, as he must to state a retaliation claim. *See Bell v. Ohio Adult Parole Auth.*, 23 Fed. Appx. 478, 479 (6th Cir. 2001).

Further, the Board could properly consider petitioner's lack of remorse and failure to accept responsibility as factors supporting a denial of parole. *See VanHook v. Tennis*, No. 03-CV-6155, 2005 WL 433460, at *10 (E.D. Pa. Feb. 23, 2005); *Romer v. Travis*, No. 03 Civ. 1670, 2003 WL 21744079, at *8 (S.D.N.Y. July 29, 2003). And even if these were improper factors to consider, the Board's decisions in both parole denials were based on a number of clearly permissible factors, such as the nature of petitioner's crime, his continued substance abuse, and his failure to abide by the terms of his probation. *See* Br. in Supp. of Pet., Appx. I, at 9-10; Appx. J, at 24-25. These other factors provide sufficient support to uphold the Board's determination, even assuming that petitioner's lack of remorse was not an appropriate factor. *See Wildermuth v. Furlong*, 147 F.3d 1234, 1236-37 (6th Cir. 1998). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' rejection of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: __March 29, 2005__

32